UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EUFRY CABRAL<br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER PALLADINI<br>& METROPOLITAN LAW ENFORCEMENT<br>COUNCIL, INC.<br>    Defendants, | Civil Action No.: 19-10429 |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

This is a civil action for violations of Eufry Cabral's constitutional rights brought under federal law pursuant to 42 U.S.C. § 1983 and § 1988, and state law pursuant to M.G.L. c. 12, § 11I. Mr. Cabral alleges that a Franklin Police Department officer used excessive force against him in violation of the Fourth and Fourteenth Amendments to the United States Constitution, the Massachusetts Civil Rights Act, and that the Metropolitan Law Enforcement Council, Inc. was complicit in those violations. Specifically, Mr. Cabral alleges that Franklin Police Department police officer Palladini who was also a Metropolitan Law Enforcement Council, Inc. SWAT team member shot him in the arm and hand without just cause. Consequently, Mr. Cabral required medical attention, underwent surgery, and today exhibits the permanent physical and emotional scars from the incident.

### PARTIES

1. Plaintiff Eufrey Cabral (hereinafter "Plaintiff Cabral") at all times relevant to this Complaint was a resident of Boston, Suffolk County, Massachusetts.

2. Defendant Christopher Palladini (hereinafter "Defendant Palladini") at all times relevant to this Complaint was a duly appointed police officer for the Franklin Police Department. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts, and the Town of Franklin. He is sued in his individual capacity.

3. Defendant Metropolitan Law Enforcement Council, Inc. (hereinafter "Metro-LEC") is a nonprofit corporation organized under the laws of the Commonwealth of Massachusetts having a principal place of business at 1003 Main Street, Millis, Norfolk County, Massachusetts. At all times relevant to this Complaint it used, deployed and supervised Defendant Palladini as a Special Weapon and Tactic (hereinafter "SWAT") team member.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claim pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district under 28 U.S.C. § 1391(b). On information and belief, the Defendants reside in this judicial district, and the events, actions and/or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## FACTS

6. Plaintiff Cabral incorporates and realleges the allegations of paragraphs 1 through 5 as if fully stated herein.

7. On or about March 15, 2016, Plaintiff Cabral along with four of his family members and/or close friends rented a room at the Motel 6, located at 125 Union Street, in Braintree, Massachusetts.

8. The Motel 6 clerk assigned them to room 226.

9. They all proceeded to room 226 and spent the night there without incident.

10. On or about March 16, 2016, Plaintiff Cabral and his family members and/or close friends awoke in room 226.

11. Unbeknownst to Plaintiff Cabral that afternoon the Braintree Police Department and the Quincy Police Department were setting up surveillance outside of the Motel 6.

12. At about the same time, the Metro-LEC SWAT team was gathering at the Braintree Police Department in preparation to execute a pending search warrant for room 226.

13. Simultaneously, an officer of the Braintree Police Department went to the Quincy District Court and applied for said search warrant, which was subsequently authorized and issued by a clerk.

14. Thereafter, that same officer went to the Braintree Police Department and provided the Metro-LEC SWAT team with a copy of the search warrant.

15. At approximately 4:00 PM, this same officer learned that four individuals were exiting room 226. Two of the individuals, Jancarlos Perez and Jassel Castillo, entered a 2015 Dodge Journey and drove away from the scene. The other two individuals, Manuel Martinez Alfidis Victorino, entered a grey 2016 Ford Explorer and they also drove away from the scene.

16. Plaintiff Cabral remained the sole occupant of room 226, and shortly before and after 4:00 PM, he had been watching television and falling in and out of sleep while lying on the bed furthest away from the front door to the room.

17. At approximately 4:25 PM, the entire Metro-LEC SWAT team arrived at the rear of the Motel 6 in several vans. Upon arrival, several members of Metro-LEC SWAT team prepared to gain access to room 226 to serve and execute the search warrant.

18. Subsequently, the Metro-LEC SWAT "entry team" consisting of nine members, one of whom was the Defendant Palladini, and the "rake and break team" consisting of two members, ascended the stairs to the second floor of the Motel 6 and made their way down the open air walkway to room 226.

19. Once outside of room 226, SWAT team member Baker, who had a key card inserted the card into the front door lock. Immediately, a light turned green on the door lock indicating the door could be opened. SWAT team member Baker opened the door.

20. The door only opened about 6-inches due to the latch bolt being engaged on the back of the door. As a result, Defendant Palladini kicked in the door with his left foot and the door flung open.

21. The Metro-LEC SWAT team and Defendant Palladini team announced "Police – search warrant!"

22. At that time, the inside of the room 226 was observed by Defendant Palladini to be dimly lit or dark.

23. Defendant Palladini, nevertheless, saw Plaintiff Cabral lying on the bed furthest from the front door. For officer safety, Defendant Palladini ordered Plaintiff Cabral to "put his hands up!" and to "get on the ground!"

24. Meanwhile, the door rebounded causing Defendant Palladini to kick-in the door a second time.

25. Simultaneously, to the left of the door, the "rake and break team" broke the window to room 226, and SWAT team member Cohoon who was to the right of the door threw a noise flash device into the room.

26. In order to comply with Officer Palladini's verbal commands, Plaintiff Cabral started raising his hands and began to slide off the bed to get onto the floor.

27. As Plaintiff Cabral was attempting to slide off the bed to get on the floor, Defendant Palladini discharged his firearm – an AR15.

28. Plaintiff Cabral was struck by a bullet that was discharged from Defendant Palladini's firearm.

29. Defendant Palladini then went over to the bed and found Plaintiff Cabral lying across the bed face down with his left hand hanging off the edge of the bed. SWAT team member West covered Plaintiff Cabral while SWAT team members Ingham and McMillan placed him in handcuffs. SWAT team members Hodson and West then rolled him onto his back.

30. At about that time, two cellphones were found on the bed. One was located underneath Plaintiff Cabral while the other one was located near his head at the edge of the bed.

31. SWAT team members then summonsed the Tactical Emergency Medical Services (hereinafter "TEMS") team into the room to provide medical treatment to Plaintiff Cabral.

32. A short time later, Emergency Medical Technicians (hereinafter "EMTS") from Brewster Ambulance arrived on the scene and took over treatment of Plaintiff Cabral from the TEMS team.

33. After evaluating Plaintiff Cabral, EMTS determined Plaintiff Cabral needed additional medical treatment. As a result, Plaintiff Cabral was escorted by EMTS and SWAT team members to an ambulance on the grounds of the Motel 6.

34. Subsequently, under a police escort Plaintiff Cabral was taken to South Shore Hospital for further treatment.

35. At South Shore Hospital, it was determined Plaintiff Cabral had sustained a deep skin abrasion and/or laceration to his right forearm, a 3 to 4 millimeter metallic object was imbedded in his left thumb, and he was experiencing some auditory discomfort all of which was attributable to the shooting and the noise flash device.

36. Plaintiff Cabral injuries were dressed and he was given some medication for the pain by medical personnel at South Shore Hospital.  He was then discharged and was told to follow-up with medical providers, if he continued to experience pain and discomfort.

37. The following day and several days after that Plaintiff Cabral continued to experience pain and discomfort so he sought follow-up treatment at Boston Medical Center.

38. On March 24, 2016, to alleviate the pain and discomfort Plaintiff Cabral underwent surgery to remove the 3 to 4 millimeter metallic object imbedded in his left thumb at Boston Medical Center.

39. Several days, weeks, and months after the incident, Plaintiff Cabral experienced loss of sleep, loss of appetite, nightmares, nausea, vomiting, flashbacks, hypervigilance and anxiety.  To address these symptoms, Plaintiff Cabral was evaluated by a physiatrist, and met with a licensed social worker at Boston Medical Center.

40. Prior to the incident, Plaintiff Cabral had worked at repairing and refinishing motor vehicles and reselling them.  However, because of the injuries he sustained and the treatment he underwent it took several months for him to return to work.

## COUNT I
## FEDERAL CIVIL RIGHTS ACT 42 U.S.C. § 1983
## AGAINST DEFENDANT CHRISTOPHER PALLADINI

41. Plaintiff Cabral incorporates and realleges the allegations of paragraphs 1 through 40 as if fully stated herein.

42. Defendant Palladini used unreasonable and excessive force against Plaintiff Cabral.

43. Defendant Palladini assaulted Plaintiff Cabral as he attempted to comply with his commands.

44. Defendant Palladini's actions deprived Plaintiff Cabral of his well-established rights under the Fourth, and Fourteenth Amendments to the United States Constitution.

45. Defendant Palladini's actions were taken in reckless disregard of Plaintiff's constitutional rights.

46. As a direct and proximate result of Defendant Palladini's actions, Plaintiff Cabral suffered the injuries and damages described above.

## COUNT II
## VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT: M.G.L. c. 12, § 11I AGAINST DEFENDANT CHRISTOPHER PALLADINI

47. Plaintiff Cabral incorporates and realleges the allegation of paragraphs 1 through 46 as if fully stated herein.

48. Defendant Palladini threatened, intimidated, and physically coerced Plaintiff Cabral even though he was complying with his commands.

49. Defendant Palladini violated Plaintiff Cabral's civil rights under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I, by threats, intimidation, and coercion.

50. As a direct and proximate result of Defendant Palladini's actions, Plaintiff Cabral suffered the injuries and damages described above.

## COUNT III
## FEDERAL CIVIL RIGHTS ACT 42 U.S.C. § 1983 *MONELL* CLAIM AGAINST DEFENDANT METROPOLITAN LAW ENFORCEMENT COUNCIL, INC

51. Plaintiff Cabral incorporates and realleges the allegations of paragraphs 1 through 50 as if fully stated herein.

52. Defendant Metro-LEC had a duty to properly train SWAT team members and responsibly supervise SWAT team members before, during and after an operation.

53. Furthermore, Defendant Metro-LEC SWAT team members had a duty to exercise reasonable care in responding to and interacting with Plaintiff Cabral.

54. Defendant Metro-LEC's failure to train and supervise its SWAT team members during the above-described operation resulted in Plaintiff Cabral being struck by a bullet discharged from its SWAT team member's firearm.

55. Thereafter, Defendant Metro-LEC' failed to discipline any of its SWAT team members for their involvement in the shooting.

56. As a direct and proximate result of Defendant Metro-LEC's actions, Plaintiff Cabral suffered the injuries and damages described above.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff Cabral prays that this Honorable Court award:

1. Compensatory damages against all Defendants jointly and severally;
2. Punitive damages against all Defendants;
3. The costs of this action, including reasonable attorneys' fees; and
4. Such other and further relief as this Court may deem necessary and appropriate.

## **REQUEST FOR A JURY TRIAL**

Plaintiff Eufry Cabral requests a jury trial on all issues.

|  |  |
|---|---|
|  | Respectfully submitted,<br>EUFRY CABRAL<br>By his Attorney:<br><br>/s/ William Roa<br>William Roa<br>BBO # 654416<br>The Law Office of William Roa<br>90 Canal Street, 4th Floor<br>Boston, MA 02114<br>(617) 426-9001 |
| DATED: March 8, 2019 | williamroaesq@gmail.com |